Priscilla S. W. Sargeant *v.* National Life Insurance Company of Montpelier, Vermont, Appellant.

*Evidence—Party dead—Insurance—Life insurance—Acts of April 15, 1869, May 23, 1887, and June 11, 1891.*

In an action upon a policy of life insurance the agent of the insurance company who made the contract with the insured is not an incompetent witness because the insured is dead. Under the acts of April 15, 1869, May 23, 1887, and June 11, 1891, an agent who makes a contract is not a party to the thing or contract in action. It is the principal for whom the agent acted who is the surviving party to the contract.

*Receipts—Evidence—Parol evidence—Life insurance.*

The rule that all receipts may be explained by parol is applicable to a life insurance policy which contains a receipt for premiums.

*Insurance—Life insurance—Suicide—Insanity.*

No recovery can be had upon a policy of life insurance where the insured has killed himself while insane if it is a condition of the policy that it shall be void in case the person whose life is insured shall die by suicide, sane or insane.

Argued Oct. 20, 1898. Appeal, No. 173, Oct. T., 1898, by defendant, from judgment of C. P. Greene Co., Oct. T., 1896, No. 47, on verdict for plaintiff. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a policy of life insurance. Before CRAWFORD, P. J.

At the trial it appeared that the policy contained the following provision:

"Death as the result of engaging in a duel, or in violation of law, and self-destruction within two years from date hereof, whether sane or insane, are not risks assumed by the company under this contract; otherwise this policy will be incontestable, except for fraud or nonpayment of premium."

On the margin of the policy was the following note: "Premium payments having been made for ten full years, this contract becomes a paid-up participating policy and the values endorsed for succeeding years are guaranteed as payable at the periods specified, if surrendered." Signed, "Geo. W. Reed, Secretary."

This marginal note was on the policy at the time of its delivery to the insured by Holland, the company's agent.

The defendant offered to prove by Mr. Holland that at the time the policy in suit was negotiated he was the agent who transacted the business for the defendant; that he delivered the policy to the insured in the same condition in which it appears today, and that at that time there was but $182.63 paid by the insured on that policy to him, as agent of the company, and that he has no interest whatever in the result of this suit. This for the purpose of explaining the marginal note on this policy signed by the secretary of the company as to whether the same is a receipt or an option.

Plaintiff objected, first, to the competency of the witness; the other party to the contract or thing in action being dead, and his mouth being closed by death, and no one else being present, and there being no offer to show that any other person was present who is now living to testify on the subject, this witness is incompetent to give evidence as to any matter that occurred at that time ; second, the contract between the parties being printed and in writing, parol proof is incompetent as to the understanding of the parties or as to the contents thereof; third, it is incompetent to permit the defendant to contradict or vary the written contract by parol proof.

By the Court: Objection sustained and exception sealed for the defendant. [4]

The defendant offered further to show by the witness on the stand that he is the agent who negotiated the policy in suit, that he delivered the same to the insured ; and further to show by him the meaning of the marginal note on the policy in suit; and this for the purpose of showing that the same was understood to be a part of the contract and not a receipt for ten annual payments on said policy.

Same objection was made as to the former offer.

By the Court: Objections sustained and exceptions sealed for defendant. [5]

The court charged in part as follows:

[The clause on the face of the policy purporting to be a receipt, being ambiguous, we deem it the duty of the court to interpret it. If any ambiguity appears on the face of any writ-

ing we deem it the duty of the court to interpret it. **And under** that we hold it the duty of the court to interpret it **against the** company issuing the policy of insurance, and on this ground we think that under all the evidence in the case here, **your** verdict ought to be for the plaintiff for the amount of the policy, with interest from the date of the death of Dr. James A. Sargeant down to the present time. And with your consent the prothonotary will now take your verdict for that amount in favor of the plaintiff, Priscilla S. W. Sargeant.] [6]

Plaintiff's point and the answer thereto were as follows:

1. This suit having been brought on a life insurance policy issued by the defendant company on November 4, 1892, for the sum of $2,500, payable on the death of James A. Sargeant to his wife, Priscilla S. W. Sargeant, the plaintiff in this suit, on the condition a premium of $182.63 be paid to said company upon the delivery of said policy, and a like sum on November 4, in each year for the term of ten years; and said premium having been paid for ten full years, the contract became a paid-up participating policy; and the said James A. Sargeant having died on July 21, 1893, the plaintiff is entitled to a verdict at your hands for the amount of said policy, to wit: the sum of $2,500, together with interest thereon from the date of said death down to this time, and your verdict should be for that amount. *Answer:* Affirmed. [1]

Defendant's point and the answer thereto were as follows:

1. If the jury believe from the evidence that James A. Sargeant, the insured, destroyed his own life by his own act within two years of the date of policy their verdict should be for the defendant. *Answer:* Refused. [2]

2. Under all the evidence in this case the verdict of the jury must be for the defendant. *Answer:* Refused. [3]

Verdict and judgment for plaintiff for $3,150. Defendant appealed.

*Errors assigned* were (1–3, 6) above instructions, quoting them; (4, 5) rulings on evidence, quoting the bill of exceptions.

*J. W. Ray*, with him *H. B. Axtell, James E. Sayers* and *Thomas Patterson*, for appellant.—Holland was a competent witness, being a mere agent: Hostetter v. Schalk, 85 Pa. 220;

American Life Ins. & Trust Co. v. Shultz, 82 Pa. 46; Roth v. Crissy, 30 Pa. 149; Abrams v. Musgrove, 12 Pa. 292; Gilpin v. Howell, 5 Pa. 51.

The appellant maintained, and still maintains, that if the marginal note should be held to be a receipt for premium payments for ten full years, that then it is the result of a mistake, and is not such a writing as both parties to the contract intended it should be : Chalfant v. Williams, 35 Pa. 215; Barnhart v. Riddle, 29 Pa. 97; Rearich v. Swinehart, 11 Pa. 233; Aldridge & Co. v. Eshleman, 46 Pa. 420; Steamboat Co. v. Brown, 54 Pa. 77; Chew v. Gillespie, 56 Pa. 308; McDonough v. Jolly Bros., 165 Pa. 542.

No recovery can be had upon a policy of life insurance where the insured has killed himself while insane, if it is a condition of the policy that it shall be void in case the person whose life is insured shall die by suicide, feloniously or otherwise, sane or insane : Tritschler v. Keystone Mutual Benefit Assn., 180 Pa. 205.

*D. S. Walton,* with him *J. A. J. Buchanan,* for appellee.—The case of Hostetter v. Schalk, 85 Pa. 220, cited by appellant, we submit, can have no application, for the reason that the parties themselves were both living, and the objection in that case was made to the competency of one of the parties to the suit because the agent with whom he dealt was not living when the party was called to testify.

It is easy to see why the death of the agent would not destroy the competency of his principal, nor of the opposite party, as the court observes in the case of the American Life Ins. & Trust Co. v. Shultz, 82 Pa. 46.

It has been the universal practice of courts to construe all contracts and documents prepared and issued by insurance companies most strongly against the companies : Porter on Insurance (3d ed.), 31; Mayer v. Isaac, 6 M. & W. 605.

Where the policy admitted payment, parol evidence that payment had not actually been made is inadmissible : Illinois Cent. Ins. Co. v. Wolfe, 37 Ill. 354; La Compagnie D' Assurance v. Grammon, 24 Lower Canada Jurist, 82; Metropolitan Life Ins. Co. v. Drach, 101 Pa. 278; Cooke on Life Insurance, sec. 94; Tisloe v. Graeter, 1 Blackf. (Ind.) 353; Brown v. Cambridge,

3 Allen (Mass.), 474; Basch v. Humboldt M. F. & M. Ins. Co., 35 N. J. Law, 429.

We contend that if the insured did not die by self-destruction in the legal meaning and acceptation of that phrase, then his death, under the facts proved by the defendant itself, in this case, was a risk assumed by the company under its contract. It matters not whether he was sane or insane if his death was caused by himself: 2 Abbott's Law Dictionary, 518; Connecticut Mutual Life Ins. Co. v. Groom, 86 Pa. 92; Eastabrook v. Union Mut. Life Ins. Co., 54 Me. 224; Cooke on Life Ins. sec. 46; Newton v. Mut. Benefit Life Ins. Co., 76 N. Y. 426; Hathaway v. National Life Ins. Co., 48 Vt. 335; Knickerbocker Life Ins. Co. v. Peters, 42 Md. 414; Life Ins. Co. v. Terry, 15 Wall. 580; Bigelow v. Berkshire Life Ins. Co., 93 U. S. 284.

OPINION BY MR. JUSTICE GREEN, January 3, 1899:

On the trial of this case the defendant company offered to prove by the agent who negotiated the policy that only one premium of $182.63 was paid at the time of the delivery of the policy. It was objected to this offer (1) that the agent was an incompetent witness, and (2) that there being a printed and written receipt on the policy for the whole ten premiums, it was incompetent to contradict the receipt by parol proof.

The learned court below rejected the proffered testimony for both of these reasons, and this ruling is assigned for error. We are clearly of the opinion that the court was in error on both of these subjects. As to the first, the witness was held to be incompetent because he was the surviving party to a thing or contract in action, and was disqualified under the act of 1869. This was an entire misconception of the act, and also of the act of 1887. The fault in the reasoning lies in treating a mere agent of a party as if he were the party himself. The act does not exclude agents, but parties, surviving parties where the other party is dead. But an agent is not a party to the thing or contract in action. It is the principal for whom the agent acted who is the surviving party to the contract.

In this case the witness, Holland, was not a party to the suit, and he was not a party to the contract. He had no interest in it, he was not a party on the record, he was but an agent of the defendant company, who transacted the business for the com-

pany, not for himself. If the ruling was sound agents would be excluded in all cases in which they transacted the business in question on behalf of their principals if the other party to the contract was dead. Such an agent was never incompetent, either before or after the act of 1869, and that act had nothing to do with the question. In American Life Ins. & Trust Co. v. Shultz, 82 Pa. 46, the action was upon a policy of life insurance, and at the trial the agent who effected the policy was dead. The other party was offered as a witness and, under objections to his competency, he was allowed to testify; we sustained the ruling. Moreover, he was permitted to testify to a verbal covenant made between himself and the deceased agent, and which was not contained in the policy. As a matter of course, if the opposite party was competent in such circumstances it must have been upon the assumption that the agent would have been competent if he had survived and the opposite party were dead.

On the second question, it is too plain for argument that the proposed testimony was competent and should have been admitted. The familiar principle that all receipts may be explained by parol is directly applicable. Even the receipt in a deed, which almost universally recites that the purchase money has been paid, and although followed by an express additional receipt at the end of the deed, is always open to verbal explanation and contradiction. Thus it was held in Hamilton v. McGuire, 3 S. & R. 355, and in Weigley v. Weir, 7 S. & R. 309, that an acknowledgment of the payment of the purchase money in the body of a deed and a receipt indorsed are not conclusive evidence of such payment. In Strawbridge v. Cartledge, 7 W. & S. 394, it was held that the recital of the consideration money in a deed is not conclusive evidence of the amount paid; it may be shown by parol to have been a much greater sum. Watson v. Blaine, 12 S. & R. 131, is to the same effect. In Hoffman v. Strohecker, 9 Watts, 183, it was held that a receipt for purchase money indorsed on a deed, may be disproved in an action of covenant for the purchase money. In Barclay v. Morrison, 16 S. & R. 129, it was ruled that a receipt is prima facie proof of the payment of the money as therein stated. In Hamsher v. Kline, 57 Pa. 397, SHARSWOOD, J., said: " A receipt in full is prima facie, but not conclusive, evidence of a settlement. It may be attacked on the ground of fraud, mistake

or ignorance of his legal rights by the party who gave it." To the same effect are Jack v. Dougherty, 3 Watts, 157, Audenreid's App., 89 Pa. 114, and many other cases.

We do not think the learned court below was correct in assuming absolutely that the marginal note was a positive assertion that the whole of the ten premium payments had actually been made. Of course, it might have that meaning, but it is also consistent with the meaning that " if " or " when " the whole number of payments were made the policy would become a full paid participating policy. It certainly could have been expressed with much more precision to have the last of these meanings, but the language is sufficiently dubious to justify the admission of verbal testimony as to what was the actual fact.

On the merits of the defense there cannot be the least doubt. The proof was absolute and entirely uncontradicted that the insured did commit suicide within the two year limit of the policy, and it clearly followed that there was no right of recovery on the policy. By the explicit terms of the policy death by self destruction, sane or insane, within two years from the date of the policy, was a risk which was not insured against. That there can be no recovery where a breach of this condition has taken place was positively ruled in the very recent case of Tritschler, etc., v. The Keystone Mut. Ben. Assn., 180 Pa. 205. In that case we held that no recovery can be had upon a policy of life insurance where the insured has killed himself while insane, if it is a condition of the policy that it shall be void in case the person whose life is insured shall die by suicide, feloniously or otherwise, sane or insane. In this class of cases it must be borne in mind that the crucial question is not, whether the insured was sane or insane at the time of his death, but did he die of his own act? If he did, that kind of a death was a risk against which the policy did not insure. It was outside of the policy, and hence the policy was inapplicable. There being no kind of question under the evidence that the insured did die of his own act, it is perfectly clear there could be no recovery.

Judgment reversed.